**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

   *Plaintiff,*

vs.             Case No. 16-10141-02-EFM

PATRICK EUGENE STEIN,

   *Defendant.*

**MEMORANDUM AND ORDER**

   This matter comes before the Court on Defendant Patrick Eugene Stein's motion for review of detention order.  On February 24, 2017, the Court held a hearing on the motion.  For the reasons stated below, the Court concludes that Stein shall remain detained pending trial. Accordingly, the Court denies Stein's motion for review of detention order (Doc. 69).

## I.  Factual and Procedural Background

   On October 19, 2016, the Grand Jury charged Stein with conspiring to use a weapon of mass destruction in violation of 18 U.S.C. §§ 2, & 2332a(a)(2)(A), (B), (D).   A superseding indictment was filed on December 14, 2016, charging Stein with two additional counts of carrying and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).

Magistrate Judge Gwynne E. Birzer held a detention hearing on October 21, 2016.  After weighing the factors set forth in 18 U.S.C. § 3142(g), Magistrate Judge Birzer ordered that Stein be held in custody pending disposition of this case.  Stein filed this present motion for review of Magistrate Judge Birzer's detention order on January 31, 2017.[1]  This Court conducted a hearing on Stein's motion on February 24, 2017.

## II.     Legal Standards

The District Court's review of a Magistrate Judge's order of detention is de novo, meaning this Court must ultimately decide the issue of detention or conditions for release without deference to the Magistrate Judge's conclusion.[2]  Under the Bail Reform Act, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[3]  Detention can be based on a showing by the Government of either: (1) that, beyond a preponderance of the evidence, the defendant poses a risk of flight; or (2) that, by clear and convincing evidence, the defendant poses a risk to the safety of any person or the community.[4]

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must take into account the following factors:

---

[1] *See* 18 U.S.C. § 3145(b) ("If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.").

[2] *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[3] 18 U.S.C. § 3142(e).

[4] *Cisneros*, 328 F.3d at 616.

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . [or] a Federal crime of terrorism . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[5]

Congress has also created a rebuttable presumption that detention is appropriate in cases where, such as here, the defendant has been charged with certain offenses such as conspiring to use a weapon of mass destruction and carrying and using a firearm in relation to a crime of violence.[6]

## III.    Discussion

Stein has been charged with one count of conspiring to use a weapon of mass destruction in violation of 18 U.S.C. §§ 2, & 2332a, and two counts of carrying and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).  Under the Bail Reform Act, once probable cause has been established that certain crimes were committed, a

---

[5] 18 U.S.C. § 3142(g).

[6] 18 U.S.C. § 3142(e)(3).

rebuttable presumption is established that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."[7]

The Act includes as "presumption" crimes any offense listed in 18 U.S.C. § 2332b(g)(5)(B) that is punishable by a maximum term of imprisonment of ten years or more.[8] The first count charged against Stein—conspiring to use weapons of mass destruction (18 U.S.C. § 2332a)—qualifies for the presumption under § 3142(e)(3)(C). Counts two and three, carrying, using, and possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1), qualify under § 3142(e)(3)(B). Thus, Stein has been charged with three crimes that carry a presumption of detention. Additionally, the Supreme Court has established that a grand jury indictment conclusively determines the existence of probable cause.[9] Therefore, the indictment satisfies the Government's preliminary burden to show probable cause for Stein, establishing the presumption of detention.

"Once a presumption is invoked, the burden of production shifts to the defendant, but the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."[10] "The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a

---

[7] 18 U.S.C. § 3142(e)(3).

[8] 18 U.S.C. § 3142(e)(3)(C).

[9] *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (citing *Ex Parte United States*, 287 U.S. 241, 250 (1932)) ("By contrast, the Court has held that an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry.").

[10] *United States v. Villapudua-Quintero*, 308 F. App'x 272, 273 (10th Cir. 2009) (quoting *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991)) (quotations omitted).

factor for consideration by the district court in determining whether to release or detain."[11] Regardless of whether the presumption applies, the Government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community.[12]

### A.  Stein's Burden to Rebut the Presumption of Dangerousness

Here, Stein has satisfied his burden of producing some evidence tending to demonstrate that he is not dangerous and he is not a flight risk.  Regarding danger to the community, Stein pointed to the fact that he has not been charged with any violent crimes in the past fifteen years. In that time period, Stein was charged with two felonies for possession of marijuana and drug paraphernalia, as well as a misdemeanor driving under the influence, speeding, driving with a suspended license, and failure to appear.  While this evidence does not convince the Court that Stein is not a danger to the community, his burden at this stage is very light.[13]  Accordingly, Stein's criminal history over the past fifteen years demonstrating a lack of violent crime constitutes "some evidence"[14] and Stein has met his burden of production.

To show that he would not be a flight risk if released, Stein submitted an unusually comprehensive release plan designed to assure the Court that he would not violate the terms of release.  In addition, Stein also demonstrated that he has no passport and the majority of his family lives in Kansas.  Again, Stein's burden at this stage is light, and this evidence is sufficient to satisfy his burden of production.

---

[11] *Id.* (quoting *Stricklin*, 932 F.2d at 1355) (quotations omitted).

[12] *See Cisneros*, 328 F.3d at 616.

[13] *See Villapudua-Quintero*, 308 F. App'x at 273.

[14] *See id.*

### B.  Government's Burden of Persuasion to Show Dangerousness

The Government must produce sufficient evidence to persuade the Court, by clear and convincing evidence, that there are no conditions of release that will reasonably assure the safety of the community if Stein is released.  After considering the evidence, the Court concludes that all four factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention.

The first factor for the Court to consider is the nature and circumstances of the offense charged.[15]  Stein has been charged with conspiring to use a weapon of mass destruction against people and property within the United States.  Specifically, the Government alleges that Stein and his co-defendants planned to use an improvised explosive device to destroy an apartment complex and mosque in Garden City, Kansas.  The complex contains more than 100 units and is home to many Muslims of the Somali refugee community.  The group intended to accomplish this goal by obtaining four vehicles, filling them with explosives (made from aluminum powder and ammonium nitrate, amongst other components), and parking them at the four corners of the apartment complex to create a large explosion.  Simply put, these allegations against Stein indicate a strong threat to society.

Additionally, this factor specifically directs the Court to consider whether the charges include a crime of violence, a Federal crime of terrorism, or involve a firearm, explosive, or destructive device.[16]  The charges against Stein possess all of those elements.  Accordingly, this factor overwhelmingly weighs in favor of detention.

---

[15] 18 U.S.C. § 3142(g)(1).

[16] 18 U.S.C. § 3142(g)(1).

The second factor for the Court to consider is the weight of the evidence against Stein.[17] This factor also weighs in favor of detention, as the weight of the evidence in support of the charges against Stein is significant.  At the hearing, the Government introduced evidence in the form of recorded conversations, text messages, and proffer of what the undercover FBI employee ("UCE") and confidential human source ("CHS") would testify to.  In these conversations, Stein expressed extreme hatred and threatened violence against Muslims—who he referred to as "cockroaches."  Without going into unnecessary detail, Stein expressed his desire to kill Muslims (even children) via a variety of different methods.  He even voiced a willingness to rape women of Somali descent to "send a message."

Not only did Stein make threats, but he sought to obtain weapons and explosives, including grenades, dynamite, blasting caps, and electronic detonation devices from the UCE. After Stein was arrested, his vehicle was searched.  The search revealed a loaded Sig Sauer 9mm handgun, approximately 100 rounds of ammunition, a small zip lock back containing a small amount of white crystal substance believed to be methamphetamine, and five or six aerial photographs of different locations in Garden City known to be associated with the Somali population.

Stein did not offer any evidence to dispute these allegations.  Instead, he characterized his conversations as "bravado," and argued that he did not actually intend to commit any acts of violence.  He contends that there would not have been an actual plan to commit violence but for the instigation of the CHS who was working with the FBI.  Thus, according to Stein, he is not an actual threat to the community.

---

[17] 18 U.S.C. § 3142(g)(2).

However, the evidence clearly shows that Stein was in fact planning violence against Muslims before the CHS got involved.  In one recorded conversation, which took place shortly after the June 2016 Orlando nightclub shooting, Stein told his group: "I was putting—I was putting some sh*t together eight months ago, six to eight months ago.  We got to do something a lot more crazy than [Omar Mateen].[18]  And it didn't take me long to have 20, 25 people that were following with me before sh*t changed."  Because the CHS did not get involved until February 2016, Stein is acknowledging that he was "putting some sh*t together" two to four months prior to the CHS's involvement.

Furthermore, in a text conversation Stein told the UCE: "I have been wanting to do something for a long time, and it has taken restraint on my part and good advice from some of my closest friends to keep myself from doing it and waiting for the right time, and we are getting very close to the right time."  In the same conversation, Stein also told the UCE: "Right now we have plenty of long guns, and handguns . . . .  We are in need of (4) ruger mark 2 or 3's 22's w/ threaded barrels . . . .  We have some very specific missions planned that would require those guns."  These statements indicate that Stein was planning acts of violence prior to the FBI's involvement.  Accordingly, the weight of the evidence against Stein is significant.

The third factor requires the Court to consider Stein's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

---

[18] Omar Mateen was the mass murderer who killed 49 people and wounded at least 53 others in a mass shooting at the Pulse nightclub in Orlando, Florida, on June 12, 2016.  Ralph Ellis, *et al.*, *Orlando shooting: 49 killed, shooter pledged ISIS allegiance*, CNN (June 13, 2016), http://www.cnn.com/2016/06/12/us/orlando-nightclub-shooting/.

proceedings."[19]  This factor also tends to indicate that Stein is a danger to the community and weighs slightly in favor of detention.  Of particular relevance, Stein has a history of drug and alcohol abuse and criminal behavior.  In 1998 he was convicted of felony attempted burglary and felony attempted criminal damage to property for which he served 12 months in prison.  In 2004 he was charged with felony possession of marijuana and drug paraphernalia, misdemeanor driving under the influence, and driving with a suspended license.  Accordingly, this factor weighs slightly in favor of detention.

Finally, the fourth factor requires the Court to consider the nature and seriousness of the danger to any person or the community that would be posed by Stein's release.[20]  Stein has demonstrated interest in committing actual violence against members of his community and has shown a lack of concern about the likelihood of killing civilians through the use of weapons of mass destruction, firearms, and other means.  Accordingly, this factor suggests that Stein would pose a grave danger to the community if released, and weighs strongly in favor of detention.

Keeping in mind that Stein is innocent until proven guilty, the Government has shown by clear and convincing evidence that there are no conditions of release that will reasonably assure the safety of the community if Stein is released.

### C.  Government's Burden of Persuasion to Show Risk of Flight

The Government may also show, by a preponderance of the evidence, that there are no conditions that will reasonably assure Stein's appearance in Court as required.  After considering the evidence, the Court concludes that the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention as well.

---

[19] 18 U.S.C. § 3142(g)(3)(A).

[20] 18 U.S.C. § 3142(g)(4).

The first factor—nature and circumstances of the offense charged—strongly suggests that Stein is a flight risk. As discussed in more detail above, the charges against Stein are some of the most serious charges that have come before this Court. All three of the counts against Stein are "crimes of violence" under the Bail Reform Act, and he is facing a potential life sentence.[21] The possibility of such a long sentence gives Stein a strong incentive to flee if released.[22] Therefore, this factor weighs strongly in favor of detention.

The second factor—weight of the evidence against Stein—also suggests that Stein would be a flight risk. As discussed in more detail above, the weight of the evidence against Stein is significant and therefore weighs strongly in favor of detention. The Government has strong evidence against Stein in the form of recorded conversations, text message conversations, testimony of the CHS and UCE, and physical evidence. This evidence strongly suggests that Stein played a significant role in the conspiracy to use a weapon of mass destruction against Muslims in Garden City. The significant evidence against Stein also gives Stein a strong incentive to flee if released.[23] Therefore, this factor weighs strongly in favor of detention.

Turning now to the third factor, Stein's history and characteristics also indicate that he is a flight risk. First, Stein has a history of failing to appear at court hearings, which casts doubt on the likelihood of appearance in Court as required.[24] Stein was cited for failure to appear in 1996

---

[21] 18 U.S.C. § 2332a.

[22] *E.g.*, *United States v. Kelley*, 2008 WL 821951, at *5 (D. Kan. March 26, 2008) (determining defendant was a flight risk "particularly in light of the fixed and substantial length of sentence possibly facing the defendant.").

[23] *See Cisneros*, 328 F.3d at 618 (noting that the "significant" evidence against the defendant "does tend to support a conclusion that [the defendant] is a flight risk because of her present knowledge of the charges against her . . . .").

[24] *See, e.g.*, *United States v. Smith*, 647 F. App'x 863, 866 (10th Cir. 2016) (upholding district court's conclusion that defendant was a flight risk based on failures to appear in the 1990's, significant cash assets, and a lengthy possible prison sentence); *United States v. Rico*, 551 F. App'x 446, 447 (10th Cir. 2014) (upholding district

and again in 2001.  He conceded that he has not resolved either of those matters.  Second, Stein

has a history of drug and alcohol abuse, which somewhat reduces the likelihood of his

appearance later in the proceedings.[25]  Thus, this factor also weighs in favor of detention.

Even though all of these factors weigh in favor of detention,[26] Stein argues that there are

conditions that will reasonably assure Stein's appearance in Court as required.  In support, Stein

submitted an unusually comprehensive release plan designed to assure the Court that he would

not violate the terms of release.

Under the proposed plan, Stein would live at home with his parents at their home just

outside of Wright, Kansas (about a one-hour drive from Garden City).  He would be outfitted

with one or two GPS ankle monitors, and a digital fence would establish two-mile perimeter

around the residence.  Because his father is in poor health, and Stein's help is needed on the

farm, he would be permitted to travel outside the fence to perform farming activities with the

prior permission of the U.S. Probation Office.  Stein contacted a local GPS monitoring company

that agreed to monitor Stein's movements.  If Stein were to move outside of the boundaries or

sever the GPS device, the company would immediately contact the Ford County Sheriff's

Department and the FBI office in Garden City.  To that end, Stein also waives any requirement

for law enforcement to obtain a warrant before arresting him if he travels outside the permitted

area.  Finally, the plan also provides for out-patient drug and alcohol treatment in Dodge City, as

well as standard and special conditions that U.S. Probation deems necessary.

---

court's conclusion that defendant was an unmanageable flight risk based on two recent failures to appear, history of drug and alcohol abuse, medical debt, no strong family ties, and fact that defendant was unemployed).

[25] *See Smith*, 647 F. App'x at 866.

[26] The fourth factor is not relevant to the risk of flight inquiry.  *See* 18 U.S.C. § 3142(g)(4) (stating that the fourth factor for the Court to consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release.").

While Stein should be commended for putting so much thought and effort into this release plan, the Court is not persuaded that the plan would reasonably assure Stein's appearance or guarantee the safety of the community. As the Government pointed out, the plan does not adequately safeguard against the possibility of Stein simply cutting off the monitor and fleeing. Of course the Ford County Sheriff's Department and the FBI office in Garden City would be notified immediately, but those departments may not have adequate resources to quickly apprehend a fugitive as dangerous as Stein. As the Government pointed out, the Sheriff's Department is responsible for a 1,099 square-mile area, but only maintains two or three deputies on shift at any given time. Similarly, the FBI office in Garden City is only staffed by two agents during business hours. Should Stein abscond, it is unreasonable to believe these departments could quickly and successfully apprehend him.

One additional problem with the plan is the fact that it puts Stein back into essentially the same situation he was in before he was taken into custody. Before his arrest, Stein was living on his family's farm in a trailer. Even though he insists that he needs to be released to obtain outpatient drug treatment, Stein's mother is a substance abuse counselor, so those services were available to him before his arrest. Furthermore, the plan calls for Stein's parents to assume a custodial role to keep Stein out of trouble. Again, Stein was living on the same land as his parents before his arrest, yet still managed to develop a drug and alcohol problem (in addition to the serious charges against him). Now Stein's father is in very poor health, seriously limiting his ability to perform the custodial role the plan requires of him. Stein's plan therefore fails to reasonably assure the Court of his appearance in subsequent hearings.

Accordingly, the Government has shown by a preponderance of the evidence that there are no conditions that will reasonably assure Stein's appearance in Court as required.

**IV.     Conclusion**

Upon de novo review of the parties' arguments, the § 3142(g) factors, and the record in this case, the Court concludes that pretrial detention is warranted.  In reaching this determination, the Court has considered Stein's proposed release plan.  However, the Court is not persuaded that those conditions will reasonably assure Stein's appearance as required and the safety of the community.

**IT IS THEREFORE ORDERED** that Stein's Motion for Review of Detention Order (Doc. 69) is hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 9th day of March, 2017.


*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE